William S. Baglivo, et al. [1] v. Commissioner. Baglivo v. Commissioner
Docket Nos. 62457, 62458.
United States Tax Court
T.C. Memo 1960-229; 1960 Tax Ct. Memo LEXIS 61; 19 T.C.M. (CCH) 1281; T.C.M. (RIA) 60229; October 27, 1960
William S. Baglivo, pro se, 264 North Lansdowne Avenue, Lansdowne, Pa., Albert Squire, Esq., for respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent has determined deficiencies of income tax and additions to tax in the following amounts. [2]
Income
Sec.
Sec.
Year
Tax
293(b)
294(d) *
1946
$ 6,742.34
$3,371.17
$1,119.32
1947
10,478.90
5,239.45
1,737.39
1948
7,375.08
3,687.54
1,247.57
1949
2,144.70
1,072.35
429.10
1950
5,726.10
2,863.05
975.57
1951
6,628.42
3,314.21
1,213.33
1952
1,319.58
659.79
400.19
1953
3,819.90
1,909.95
262.03
*62 The following issues are presented: (1) Whether the income tax returns for the years 1946 to 1950, inclusive, were false and fraudulent with intent to evade tax. (2) Whether all or part of the deficiency for each of the years 1946 to 1953, inclusive, is due to fraud with intent to evade tax. (3) Whether petitioners omitted gross income in excess of 25 per cent of the amount stated on their joint return for 1950. (4) Whether assessment and collection of deficiencies determined for each of the years 1946 to 1950, inclusive, are barred by the statute of limitations. (5) The extent to which error has been established in respondent's determination of deficiencies for each of the respective years in issue. (6) Whether the addition to tax for failure to file declarations of estimated tax under section 294(d)(1)(A), Code of 1939, is to be applied for each of the years 1946 to 1952, inclusive. (7) Whether the addition for substantial underestimation of estimated tax under section 294(d)(2), Code of 1939, is to be applied *63 for each of the years 1946 to 1953, inclusive. Findings of Fact For the years 1946 and 1947, William S. Baglivo, hereafter referred to as petitioner, filed individual income tax returns with the then collector of internal revenue for the first district of Pennsylvania. For each of the years 1948 to 1953, inclusive, petitioner and his wife, Isabella Baglivo, filed joint returns. The returns for 1948-1951, inclusive, were filed with the then collector of internal revenue for the first district of Pennsylvania. The returns for 1952 and 1953 were filed with the district director of internal revenue, Philadelphia, Pennsylvania. Respondent did not determine that petitioner's wife had any personal income. She is a party because of the joint returns for the years 1948-1953. Net Worth Petitioner filed no income tax returns for the years 1916 to 1939, inclusive. For the year 1940 he filed a return showing no tax due. For the years 1941 to 1945, inclusive, he filed returns showing the following amounts as his income tax liabilities Year
Income Tax
1941
$ 20.90
1942
120.36
1943
346.84
1944
424.11
1945
306.20
Petitioner began his licensed practice of dentistry *64 in 1925 in Philadelphia. During all of the taxable years in question he maintained a dental office at 2031 Snyder Avenue, Philadelphia, Pennsylvania. From 1948 to 1953, inclusive, petitioner also maintained an office in the Medical Arts Building. Beginning in 1926 or 1927 and in each of the years involved herein, petitioner taught classes at Temple University in the dental field. He reported income from this source on his returns for the years 1947-1953, inclusive. Petitioner received no property by gift or inheritance. Petitioner's wife received no gifts, but inherited about $5,000 from her parents in 1936 or 1937. On February 13, 1951, petitioner presented a financial statement to a bank in order to procure credit. This statement listed no cash on hand. When interviewed by respondent's agents on November 30, 1954, petitioner stated that his cash on hand was about $300, since, in recent years he was concerned about thievery. Petitioner stated that he kept more cash on hand in earlier years but did not attempt to approximate the sum. Petitioner opened the following savings accounts in the Philadelphia Savings Fund Society (P) and in the Beneficial Savings Fund Society (B) on *65 the dates shown: Date
Account
Opened
Bank
Number
Title of Account
4- 8-29
P.
C-18,894
Dr. William S. Baglivo
9-20-35
P.
C-49,974
William S. Baglivo in trust for Isabella
Baglivo (Wife)
4- 1-36
B.
S-8751
Dr. William S. Baglivo
4- 1-36
B.
S-8752
Dr. William S. Baglivo in trust for
daughter, Isabella
4- 1-36
B.
S-8753
Dr. William S. Baglivo in trust for
son, Dominick
4-12-38
P.
C-63936
William S. Baglivo in trust for Mrs.
Carmella Baglivo (Mother)
4-12-38
P.
C-63937
William S. Baglivo, in trust for Dr.
Domenico A. Baglivo (Father)
3- 8-39
B.
S-12741
William S. Baglivo in trust for Miss
Gemma Baglivo (Sister)
7- 9-41
B.
S-17265
William S. Baglivo, in trust for son,
Felix St. Elma Baglivo
As of the end of each of the years 1929 to 1941, inclusive, petitioner's total savings account balances were as follows: Philadelphia
Savings
Fund
Fund
Beneficial
Society
Society
Savings
Date
Accounts
Accounts
Total
12-31-29
$ 1,533.33
$ 1,533.33
12-30-30
2,563.83
2,563.83
12-31-31
94.43
94.43
12-31-32
1,044.68
1,044.68
12-31-33
3,055.93
3,055.93
12-31-34
5,620.50
5,620.50
12-31-35
9,421.87
9,421.87
12-31-36
10,705.96
$ 2,937.05
13,643.01
12-31-37
12,814.76
6,213.49
19,028.25
12-31-38
16,232.54
6,885.36
23,117.90
12-31-39
17,409.04
7,948.09
25,357.13
12-31-40
17,757.16
8,140.68
25,897.84
12-31-41
18,112.28
10,687.36
28,799.64
*66 From September 10, 1930, to December 31, 1945, petitioner withdrew a total of $49,526.83 from his savings bank accounts. The date and amount of each withdrawal are as follows: Account
Amount
Date
No.
Withdrawn
Sept. 10, 1930
C-18,894
$ 2,300.00
May 8, 1931
C-18,894
900.00
Oct. 21, 1931
C-18,894
3,306.83
Apr. 6, 1932
C-18,894
220.00
Apr. 3, 1934
C-18,894
200.00
June 22, 1942
C-18,894
7,000.00
June 23, 1943
C-18,894
3,000.00
Dec. 8, 1943
S-8751
3,300.00
Dec. 8, 1943
S-8752
2,200.00
Dec. 8, 1943
S-8753
2,200.00
Dec. 8, 1943
S-12741
700.00
Dec. 8, 1943
S-17265
2,200.00
Dec. 20, 1943
C-63936
1,800.00
Jan. 5, 1944
C-18,894
1,900.00
Jan. 5, 1944
C-49,974
2,600.00
Jan. 5, 1944
C-63937
1,800.00
July 11, 1944
S-8752
500.00
July 11, 1944
S-8753
500.00
July 11, 1944
S-17265
1,500.00
Oct. 31, 1945
S-8751
290.00
June 15, 1945
S-8752
200.00
June 15, 1945
S-8753
200.00
June 15, 1945
S-17265
2,000.00
Oct. 31, 1945
S-8752
2,540.00
Oct. 31, 1945
S-17265
2,530.00
Nov. 1, 1945
S-8753
3,640.00
Total
49,526.83
At the end of each of the years 1945 to 1953, inclusive, petitioner had balances on deposit *67 in the following banks in the amounts shown: Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
Cash in Banks
1945
1946
1947
1948
Central-Penn National
$11,538.48
$3,965.73
$ 917.19
$1,382.79
Bank
Philadelphia Savings
1,490.11
446.69
453.39
460.18
Fund Society
Beneficial Savings
125.31
127.02
128.73
294.58
Fund Society
Total
$13,153.90
$4,539.44
$1,499.31
$2,137.55
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
Cash in Banks
1949
1950
1951
1952
1953
Central-Penn National
$1,121.21
$5,431.72
$ 325.81
$1,383.91
$3,405.73
Bank
Philadelphia Savings
467.06
474.05
524.09
534.53
3,062.12
Fund Society
Beneficial Savings
298.76
303.09
359.64
366.98
3,407.39
Fund Society
Total
$1,887.03
$6,208.86
$1,209.54
$2,285.42
$9,875.26
As of the end of the years 1948 and 1949, petitioner owned the following stock for which he paid the amounts shown: No.
Dec. 31,
Dec. 31,
Securities
Shares
1948
1949
Amer. Broadcasting Co.
100
$ 900.00
$ 900.00
Commonwealth & Southern Corp.
100
308.30
Kerr McGee Oil Ind. Inc.
100
1,100.00
New England Elec. System
50
509.41
Armour & Co.
100
800.74
Rexall Drug Inc.
100
573.49
Totals
$1,208.30
$3,883.64
*68 In 1941 or 1942, petitioner began to invest in mortgages. He received interest income from this source in each of the years involved herein. As of the end of each of the years 1945 to 1953, inclusive, petitioner owned mortgages with total principal balances due him in the amounts as follows: Date
Mortgages
12-31-45
$ 70,423.36
12-31-46
96,249.27
12-31-47
125,800.00
12-31-48
137,650.61
12-31-49
146,828.14
12-31-50
163,293.09
12-31-51
177,935.88
12-31-52
154,021.85
12-31-53
156,732.77
With the exception of one mortgage at 4.8 per cent, all petitioner's mortgages were at the interest rate of 5 and 6 per cent. As of the end of each of the years 1945 to 1953, inclusive, petitioner owned the following real estate, which cost him the amounts shown: 1945
1946
1947
1948
Real Estate
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
2031 Snyder Avenue
$7,000
$7,000
$7,000
$7,000
2501 South 20th Street
264 North Lansdowne
Avenue
Total
$7,000
$7,000
$7,000
$7,000
1949
1950
1951
1952
1953
Real Estate
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
2031 Snyder Avenue
$7,000
$7,000
$ 7,000
$ 7,000
$ 7,000
2501 South 20th Street
12,400
12,400
12,400
264 North Lansdowne
Avenue
30,000
30,000
Total
$7,000
$7,000
$19,400
$49,400
$49,400
*69 Petitioner had no liabilities as of the end of the years 1945 to 1953, inclusive. For the year 1946, petitioner filed an individual income tax return reporting income tax of $397.18. He paid $253.38 with the return filed in March 1947, and took credit for $143.80 of estimated tax previously paid. On his individual return for 1947 and joint returns for 1948-1953, inclusive, petitioner reported the following income, deductions, and income tax: 1947
1948
1949
Salary - Temple University
$ 850.00
$ 650.00
$ 350.00
Interest income
1,794.72
1,705.25
1,561.01
Rental income (net)
275.00
Net capital gain
91.00
Net profit from dentistry: Total receipts
8,925.30
8,207.50
9,065.37
Less - deductions
6,071.03
4,403.05
3,760.30
Net profit
$2,854.27
$3,804.45
$5,305.07
Adjusted gross income
$5,498.99
$6,159.70
$7,582.08
Less - Standard deduction
500.00
615.97
758.20
Net income
$4,998.99
$5,543.63
$6,823.88
Less - Exemptions
3,000.00
3,000.00
3,600.00
Income subject to tax
$1,998.99
$2,543.63
$3,223.88
Income tax
$ 379.81
$ 422.24
$ 537.16
1950
1951
1952
1953
Salary - Temple University
$ 350.00
$ 350.00
$ 350.00
$ 350.00
Interest income
2,860.50
3,952.64
4,596.60
4,980.84
Rental income (net)
Net capital gain
141.00
Net profit from dentistry: Total receipts
7,402.97
8,228.00
8,149.00 7,341.52
Less - deductions
4,383.77
4,062.29
3,991.60
3,723.42
Net profit
$3,019.20
$4,165.71
$4,157.40
$3,618.10
Adjusted gross income
$6,370.70
$8,468.35
$9,104.00
$8,948.94
Less - Standard deduction
637.07
846.83
910.40
89489
Net income
$5,733.63
$7,621.52
$8,193.60
$8,054.05
Less - Exemptions
3,600.00
3,000.00
3,000.00
3,000.00
Income subject to tax
$2,133.63
$4,621.52
$5,193.60
$5,054.05
Income tax
$ 371.24
$ 954.88
$1,181.62
$1,147.30
*70 Petitioners are the parents of five children whose ages were 38, 33, 28, 26, and 18 at the time of trial. At the time this case was heard one son was in his final year of dental studies at Temple University. Tuition at Temple was $400over per semester. This son had previously attended St. Joseph's College. Although his son earned some money, petitioner paid part of his expenses during the time he attended college and dental school. One of petitioner's daughters also attended college and was a trained dental hygienist. A second son attended Lincoln College Preparatory School in 1946 and petitioner paid his tuition and fees of $420. In 1952 petitioner moved to Lansdowne, Pennsylvania, where he purchased a home for $30,000. Petitioner purchased rugs costing over $1,000, but under $5,000, silverware, and other housefurnishings including 21 or 22 mahogany pieces before and at the time of his moving. Petitioner made the following Federal income tax payments in the years indicated: Year
Amount
1946
$ 100.00
1947
253.38
1948
379.81
1949
422.24
1950
537.16
1951
371.24
1952
954.88
1953
1,781.62
Respondent's computations of petitioner's net income and *71 understatements thereof for the years 1946 to 1953, inclusive, using the net worth and expenditures method may be summarized in the following Schedule A. So far as necessary to our own conclusions, we find it supported by the record except to the extent of adjustments noted in our opinion. SCHEDULE A Summary of Respondent's Determination of Net Income and Understatements thereof using the Net Worth Method. [4]
Assets
12-31-45
12-31-46
12-31-47
Cash on hand
$ 2,500.00(a)
$ 2,000.00(a)
$ 1,500.00(a)
Cash in banks
13,153.90
4,539.44
1,499.31
Stocks
0
0
0
Mortgages
70,423.36
96,249.27
125,800.00
Real Estate
7,000.00(s)
7,000.00(s)
7,000.00(s)
Automobile
0
0
0
Total Assets
$93,077.26
$109,788.71
$135,799.31
Less: Liabilities
(0)
(0)
(0)
Net Worth
$93,077.26
$109,788.71
$135,799.31
Less: prior year's net worth
(93,077.26)
(109,788.71)
Increase in net worth
$ 16,711.45
$ 26,010.60
Add: Nondeductible payments
Living expenses
5,200.00(a)
5,500.00(a)
Fed. Income Tax Payments
100.00
253.38
379.81
Total
$ 22,011.45
$ 31,763.98
Less: Depreciation
(140.00)
(140.00)
50% of long-term capital gain
(0)
(0)
Adjusted gross income
$ 21,871.45
$ 31,623.98
Less: Maximum standard deduction
(500.00)
(500.00)
Net income received
$ 21,371.45
$ 31,123.98
Less: Net income reported
5,582.18
4,998.99
Understatement of net income
$ 15,789.27
$ 26,124.99
*72 Assets
12-31-48
12-31-49
12-31-50
Cash on hand
$ 1,000.00(a)
$ 500.00(a)
$ 300.00
Cash in banks
2,137.55
1,887.03
6,208.86
Stocks
1,208.30
3,883.64
0
Mortgages
137,650.61
146,828.14
163,293.09
Real Estate
7,000.00(s)
7,000.00(s)
7,000.00(s)
Automobile
0
0
0
Total Assets
$148,996.46
$160,098.81
$176,801.95
Less: Liabilities
(0)
(0)
(0)
Net Worth
$148,996.46
$160,098.81
$176,801.95
Less: prior year's net worth
(135,799.31)
(148,996.46)
(160,098.81)
Increase in net worth
$ 13,197.15
$ 11,102.35
$ 16,703.14
Add: Nondeductible payments
Living expenses
5,800.00(a)
6,100.00(a)
6,400.00(a)
Fed. Income Tax Payments
422.24
537.16
371.24
Total
$ 19,376.96
$ 17,624.59
$ 23,640.30
Less: Depreciation
(140.00)
(140.00)
(140.00)
50% of long-term capital gain
(0)
(91.00)
(39.69)
Adjusted gross income
$ 19,236.96
$ 17,393.59
$ 23,460.61
Less: Maximum standard deduction
(1,000.00)
(1,000.00)
(1,000.00)
Net income received
$ 18,236.96
$ 16,393.59
$ 22,460.61
Less: Net income reported
5,543.63
6,823.88
5,733.63
Understatement of net income
$ 12,693.33
$ 9,569.71
$ 16,726.98
Assets
12-31-51
12-31-52
12-31-53
Cash on hand
$ 300.00
$ 300.00
$ 300.00
Cash in banks
1,209.54
2,285.42
9,875.26
Stocks
0
0
0
Mortgages
177,935.88
154,021.85
156,732.77
Real Estate
19,400.00(s)
49,400.00(s)
49,400.00(s)
Automobile
1,600.00(u)
1,600.00(u)
1,600.00(u)
Total Assets
$200,445.42
$207,607.27
$217,908.03
Less: Liabilities
(0)
(0)
(0)
Net Worth
$200,445.42
$207,607.27
$217,908.03
Less: prior year's net worth
(176,801.95)
(200,445.42)
(207,607.27)
Increase in net worth
$ 23,643.47
$ 7,161.85
$ 10,300.76
Add: Nondeductible payments
Living expenses
6,700.00(a)
7,000.00(a)
7,300.00(a)
Fed. Income Tax Payments
954.88
1,781.62
Total
$ 30,714.71
$ 15,116.73
$ 19,382.38
Less: Depreciation
(140.00)
(140.00)
(140.00)
50% of long-term capital gain
(0)
(0)
(0)
Adjusted gross income
$ 30,574.71
$ 14,976.73
$ 19,242.38
Less: Maximum standard deduction
(1,000.00)
(1,000.00)
(1,000.00)
Net income received
$ 29,574.71
$ 13,976.73
$ 18,242.38
Less: Net income reported
7,621.52
8,193.60
8,054.05
Understatement of net income
$ 21,953.19
$ 5,783.13
$ 10,188.33
*73 On February 7, 1951, petitioner submitted a signed statement of his financial condition to the Central-Penn National Bank of Philadelphia for credit purposes, stating therein that his annual net profit was between $12,000 and $15,000. He also stated that he owned a Buick automobile worth $1,600. Two real estate agents, Joseph Campbell and F. B. Cortese, handled the collections of interest on almost all of petitioner's mortgages. On November 30, 1954, petitioner told respondent's agents he made such collections himself and did not use real estate agents for this purpose. It was not until the agents interviewed the mortgagors of record that they learned of Campbell and Cortese. Cortese and Campbell each kept records of their collections from petitioner's mortgagors. Both turned their records over to Jacob M. Sakim, petitioner's accountant. Sakim used these records to prepare a schedule of mortgage balances and then turned the schedule over to George D'Angelo, petitioner's attorney. D'Angelo voluntarny turned the schedule over to a representative of the Internal Revenue Service in an attempt to reconcile differences in petitioner's disputed tax liability. Schedule B of each of *74 the returns for the years 1950 to 1953, inclusive, is entitled, "Income from Interest." Space is provided therein for the taxpayer to report the details of interest income and to name the payor thereof. Petitioner showed no details and no payors. He reported only one lump sum for interest in each of these years describing the amount as "Various mortgages." Petitioners' return for the year 1950 was filed March 15, 1951. The notice of deficiency for that year was mailed to petitioners on February 27, 1956, less than five years from the date the return was filed. Petitioners reported gross income on the 1950 return as follows: Salary - Temple University
$ 350.00
Interest income
2,860.50
Total receipts from dentistry
7,402.97
Capital gain: Long-term
$168.75
Short-term
125.00
293.75
Total
$10,907.22
Petitioner filed no declarations of estimated tax for the years 1947 to 1952, inclusive. Petitioner filed a declaration of estimated tax for the year 1946 declaring an estimated tax of $143.80. Petitioners filed a declaration of estimated tax for the year 1953 in which they declared estimated tax of $600. Petitioner's cash on hand did not exceed *75 the following amounts on the following dates: 12/31/45 - $10,000; 12/31/46 - $8,000; 12/31/47 - $6,000; 12/31/48 - $5,000; 12/31/49 - $4,000; 12/31/50 - $3,000; 12/31/51 - $1,000; 12/31/52 - $300; 12/31/53 - $300. The income tax returns filed by petitioner for each of the years in issue except 1946 were false and fraudulent with intent to evade taxes. Some part of the deficiency for each of the years in issue except 1946 was due to fraud with intent to evade taxes. Opinion Fraud Issues In addition to the question of additions to tax under section 293(b), the issue of fraud relates to the question of limitations. In the absence of fraudulent returns, the years 1946 to 1949, inclusive, will be barred by limitations. See Section 276. [5] The year 1950 will likewise be barred in the absence of fraud unless section 275(c) applies. Use of Net Worth and Expenditures Method
*76 Respondent has the burden of proving fraud by clear and convincing evidence. In his effort to meet this burden, respondent has reconstructed petitioner's income for the years 1946-1953, inclusive, using the net worth and expenditures method. We have discussed frequently the propriety of the use of the net worth and expenditures method in comparable cases. The record as a whole in the instant case demonstrates so clearly that the use of the net worth and expenditures method is not only proper, but the only reasonable approach by respondent, that we deem detailed discussion wholly unnecessary to justify the overall application of the method. We turn therefore to the specific items which merit discussion. Cash on hand Petitioner received no gifts or inheritances. His wife received no gifts but inherited $5,000 in 1936 or 1937. Petitioner testified that he began working at an early age in his father's metals business. He then worked in the jewelry business, as a dental mechanic, and as a dentist, both prior to and after receiving his license to practice dentistry. He also worked for newspaper circulation departments and various other enterprises. He sold students' notes, drawings, *77 and dental materials in addition to haberdashery. Petitioner stated that as a young man he was known as "Moneybags" and was from time to time offered various business opportunities for which he possessed the needed capital. Petitioner stated that he practiced and taught dentistry from 1925 to 1941 or 1942 when in addition to his practice he began investing in mortgages. In an application for bank credit dated February 7, 1951, petitioner stated that he had no cash on hand. When interviewed by respondent's agents in 1954, petitioner stated that he had kept only about $300 cash on hand for the past several years since he had become afraid of thievery, but that he used to keep more cash on hand. Petitioner argues that prior to the time he became afraid of thievery he kept a good deal of cash at home and deposited the money needed for each of his mortgage investments into his checking account prior to any given transaction. At no time has petitioner estimated the amount of cash he kept on hand during the years preceding his fear of thievery. Petitioner told respondent's agents in 1954 that he had withdrawn his money from banks during the depression and kept that money at home. The *78 records of petitioner's bank accounts are in evidence, and they indicate that petitioner's withdrawals prior to 1942 total only about $6,000. It is respondent's contention that the money used by petitioner for his mortgage investments came from savings account withdrawals and current income. The following schedule compares petitioner's mortgage investments with his savings account withdrawals for the years 1941 to 1945, inclusive: Amount
Amount of
Date
of Mortgage
Date
Withdrawal
10-27-41
$ 2,000.00
4-25-42
500.00
5-21-42
1,000.00
6-22-42
$ 7,000
7-31-42
500.00
11- 5-42
1,196.01
11- 5-42
1,376.35
11-20-42
1,201.00
12-30-42
1,200.00
6-21-43
1,500.00
6-23-43
3,000
6-24-43
6,000.00
12- 8-43
1,200.00
12- 8-43
3,300
12- 8-43
700.00
12- 8-43
2,200
12- 8-43
2,200
12- 8-43
700
12- 8-43
2,200
12-20-43
1,800.00
12-20-43
1,800
1- 5-44
1,900
1- 5-44
2,600
1- 5-44
1,800
7-11-44
500
7-11-44
500
7-11-44
1,500
7-27-44
3,800.00
8-30-44
1,400.00
8-30-44
1,650.00
8-30-44
1,650.00
12-11-44
4,000.00
1- 2-45
500.00
1- 9-45
3,850.00
5- 8-45
4,300.00
5-18-45
4,800.00
6-15-45
200
6-15-45
200
6-15-45
2,000
6-29-45
1,100.00
7-13-45
2,500.00
9-18-45
4,700.00
10- 6-45
1,000.00
10-31-45
290
11- 8-45
4,000.00
10-31-45
2,540
11-13-45
4,500.00
10-31-45
2,530
11-13-45
500.00
11- 1-45
3,640
11-30-45
2,000.00
12- 5-45
2,000.00
12-14-45
2,000.00
Total
$70,423.36
$42,600
*79 The above schedule indicates some correlation between mortgage investments and withdrawals from savings during the years 1941 to 1945, inclusive, but obviously does not demonstrate a complete correlation. Respondent has introduced in evidence an assessment list covering petitioner's returns and payments for the years 1916-1945, inclusive, showing that no returns were filed prior to 1939; a return was filed for 1940 showing no tax liability; and returns for 1941 to 1945, inclusive, were filed showing the following liabilities and payments: Year
Amount
1941
$ 20.90
1942
120.36
1943
346.84
1944
424.11
1945
306.20
Using these payments respondent has reconstructed petitioner's maximum net income for the period 1916 to 1945, inclusive. Although such computations may not in all instances be sufficiently precise to prove petitioner's income for each of these years with exactitude, they are clearly adequate on the present record to demonstrate the absence of prior income sufficient to accumulate a cash hoard of any significant size. See , rehearing denied . Since the reconstruction *80 is directed to the calculation of maximum income, any deviation from actual income would tend to be favorable to petitioner. The reconstruction of petitioner's maximum net income from 1916 to 1945, inclusive, shows $82,500 for the period 1916 to 1940, inclusive, $3,848.33 for 1941; $3,700.33 for 1942; $4,607.33 for 1943; $5,170.55 for 1944; and $4,581.00 for 1945, or a total of $104,407.58 for the entire period. It should be remembered in this connection that during this period petitioner maintained and educated a large family and built up a net worth of approximately $90,000. Based upon the afore-mentioned circumstances, respondent has recommended that petitioner be allowed the following amounts of cash on hand: Date
Amount
12-31-45
$ 2,500
12-31-46
2,000
12-31-47
1,500
12-31-48
1,000
12-31-49
500
12-31-50
300
12-31-51
300
12-31-52
300
12-31-53
300
Upon our own consideration of the facts, while we cannot say that respondent's recommended allowances are demonstrably too small, we prefer, on the fraud issue, to resolve any possible doubt in petitioner's favor. We therefore make allowances of cash on hand for the purpose of the fraud issue, *81 in the following amounts: Date
Amount
12-31-45
$10,000
12-31-46
8,000
12-31-47
6,000
12-31-48
5,000
12-31-49
4,000
12-31-50
3,000
12-31-51
1,000
12-31-52
300
12-31-53
300
It is our view upon analysis of all of the relevant evidence that there was no occasion for accumulation of cash in excess of the amounts we have allowed, and that cash on hand on the various dates in question did not, in fact, exceed our allowances. We may add that petitioner has not enlightened us in relation thereto, and has not gone forward with the presentation of any evidence to the contrary. Cash in banks Respondent has introduced in evidence copies of petitioner's bank record cards in order to show the amount of cash in banks for the years 1945 to 1953, inclusive. Petitioner has introduced no evidence which would show the existence of any other accounts. Respondent's agent checked the records of all banks in which petitioner stated that he had accounts in the preparation of the net worth schedule. Respondent has correctly determined cash in banks for each of the years 1945 to 1953, inclusive. Stocks Respondent has introduced in evidence the records of the securities *82 dealer handling petitioner's account in order to prove ownership of stocks for 1948 and 1949. No evidence was introduced to show that these records were in any way incomplete or incorrect. Respondent correctly determined the basis of petitioner's stocks as of December 31, 1948, and December 31, 1949. Real estate Petitioner has admitted in his pleadings that the basis of his real estate was correctly determined by respondent. Automobile Respondent determined that petitioner had an automobile at the end of each of the years 1951, 1952, and 1953. The record merely discloses that petitioner listed an automobile, the value of which was $1,600 in an application for credit dated February 7, 1951. Respondent has failed to prove that this automobile was owned by petitioner at the end of the years alleged or that the automobile was acquired in 1951. Mortgages By far the greatest asset item on respondent's net worth schedule is the mortgages item. Respondent has revised this item on the basis of a schedule of mortgages (Schedule S) prepared by Sakim, petitioner's accountant. Sakim's schedule, consisting of 89 itemized mortgages, was prepared from information supplied by the two *83 real estate men, Campbell and Cortese. Some data was supplied by petitioner's attorney, Leonard DeNote, and some by petitioner himself. Petitioner knew of the existence of this schedule. Sakim presented the schedule to George D'Angelo, petitioner's attorney, after the death of DeNote. D'Angelo, in the course of representing petitioner at a conference with respondent's agents, voluntarily turned Sakim's schedule of mortgages over to the Internal Revenue Service in an attempt to reconcile petitioner's stand on the mortgages with that of respondent. The schedule was received in evidence, petitioner's only objection being that it was a confidential communication. We accept the facts as set forth in Schedule S. Liabilities Petitioner's pleadings admit that he had no liabilities at the end of any of the years in question. Living expenses Respondent has determined that petitioner's nondeductible living expenses totaled $5,200 in 1946 and increased $300 per year for each of the taxable years involved. This determination is based on the fact that petitioner had to support his wife and either three or four children for each of the years involved. Petitioner also helped bear the cost *84 of educating one of his daughters to be a dental hygienist and his son's undergraduate and dental education. Another of petitioner's sons attended a preparatory school in 1946. Petitioner purchased a home in 1952 and furnished it. Petitioner testified to the fact that all his children worked or did jobs around the home. He further stated that his family lived frugally. When asked to approximate his cost of living at the time of trial petitioner did not name a specific sum, but stated that it was under $10,000 per year. In the light of the facts discussed above, viewed from the perspective of the fraud issue, it is our opinion that petitioner's living expenses for the years 1946 to 1953, inclusive, were not less than the following amounts: Year
Amount
1946
$4,500
1947
4,800
1948
5,000
1949
5,300
1950
5,500
1951
6,000
1952
6,500
1953
6,500
Federal Income Tax Payments Petitioner's pleadings admit the correctness of respondent's amounts of Federal income tax payments for the years 1948 to 1952, inclusive. Respondent's assessment list shows that $100 was paid in 1946, and that $253.38 was paid in 1947. As for 1953, petitioner admits payment of *85 $1,181.62, which represents total payment of 1952 tax. Respondent's assessment list shows that petitioner also paid $600 of estimated 1953 tax in 1953. Miscellaneous Respondent has agreed that petitioner be allowed $140 depreciation on his real estate at 2031 Snyder Avenue for the years 1946 to 1953, inclusive. Petitioner's pleadings also request allowance of depreciation of the 2501 South 20th Street property for the years 1952 and 1953, although the returns for these years claimed no such depreciation. We shall not discuss this item since it is in no way determinative of the fraud issue. Petitioner's pleadings also request depreciation on an automobile, but since we have held that respondent did not affirmatively prove that said auto belonged on the net worth schedule, we need not pass upon its depreciation. The items of long-term capital gain for 1949 and 1950, are too inconsequential to have any effect on the fraud issue. Petitioners used the standard deduction for the years 1947 to 1953, inclusive, and did not itemize deductions. In his computation respondent has, therefore, correctly allowed petitioner the maximum standard deduction. Established Items Summarized in *86 Net Worth Statement Using the form of a net worth statement, our determinations as to proved items may be summarized in the following Schedule B: SCHEDULE B Summary of Proved Items of Net Worth and Recomputation of Net Income Assets
12-31-45
12-31-46
12-31-47
12-31-48
12-31-49
Cash on hand
$ 10,000.00
$ 8,000.00
$ 6,000.00
$ 5,000.00
$ 4,000.00
Cash in banks
13,153.90
4,539.44
1,499.31
2,137.55
1,887.03
Stocks
0
0
0
1,208.30
3,883.64
Mortgages
70,423.36
96,249.27
125,800.00
137,650.61
146,828.14
Real Estate
7,000.00
7,000.00
7,000.00
7,000.00
7,000.00
Total Assets
$100,577.26
$115,788.71
$140,299.31
$152,996.46
$163,598.81
Liabilities
0
0
0
0
0
Net Worth
$100,577.26
$115,788.71
$140,299.31
$152,996.46
$163,598.81
Less: Prior year's net
100,577.26
115,788.71
140,299.31
152,996.46
worth
Increase in net
$ 15,211.45
$ 24,510.60
$ 12,697.15
$ 10,602.35
worth
Nondeductible
payments
Living expenses
4,500.00
4,800.00
5,000.00
5,300.00
Federal income
100.00
253.38
379.81
422.24
tax payments
Total
$ 19,811.45
$ 29,563.98
$ 18,076.96
$ 16,324.59
Less: Depreciation
(140.00)
(140.00)
(140.00)
(140.00)
50% of long-term
0
0
0
(91.00)
capital gain
Adjusted gross
$ 19,671.45
$ 29,423.98
$ 17,936.96
$ 16,093.59
income
Less: Maximum standard
(500.00)
(500.00)
(1,000.00)
(1,000.00)
deduction
Net income
$ 19,171.45
$ 28,923.98
$ 16,936.96
$ 15,093.59
received
Less: Net income
5,582.18
4,998.99
5,593.63
6,823.88
reported
Understatement of
$ 13,589.27
$ 23,924.99
$ 11,393.33
$ 8,269.71
net income
*87 Assets
12-31-50
12-31-51
12-31-52
12-31-53
Cash on hand
$ 3,000.00
$ 1,000.00
$ 300.00
$ 300.00
Cash in banks
6,208.86
1,209.54
2,285.42
9,875.26
Stocks
0
0
0
0
Mortgages
163,293.09
177,935.88
154,021.85
156,732.77
Real Estate
7,000.00
19,400.00
49,400.00
49,400.00
Total Assets
$179,501.95
$199,545.42
$206,007.27
$216,308.03
Less: Liabilities
0
0
0
0
Net Worth
$179,501.95
$199,545.42
$206,007.27
$216,308.03
Less: Prior year's net worth
163,598.81
179,501.95
199,545.42
206,007.25
Increase in net worth
$ 15,903.14
$ 20,043.47
$ 6,461.85
$ 10,300.78
Nondeductible payments
Living expenses
5,500.00
6,000.00
6,500.00
6,500.00
Federal income tax payments
537.16
371.24
954.88
1,781.62
Total
$ 21,940.30
$ 26,414.71
$ 13,916.73
$ 18,582.40
Less: Depreciation
(140.00)
(140.00)
(140.00)
(140.00)
50% of long-term capital gain
(39.69)
0
0
0
Adjusted gross income
$ 21,760.61
$ 26,274.71
$ 13,776.73
$ 18,442.40
Less: Maximum standard deduction
(1,000.00)
(1,000.00)
(1,000.00)
(1,000.00)
Net income received
$ 20,760.61
$ 25,274.71
$ 12,776.73
$ 17,442.40
Less: Net income reported
5,733.63
7,621.52
8,193.60
8,054.05
Understatement of net income
$ 15,026.98
$ 17,653.19
$ 4,583.11
$ 9,388.35
*88 Fraud - Fraudulent Returns 1946 Respondent has not introduced petitioner's 1946 individual income tax return in evidence. He has introduced an assessment list showing that $397.18 in tax was listed and paid by petitioner. Respondent has recomputed petitioner's maximum net income by allowing petitioner seven exemptions and arriving at a net income amount of $5,582.18 which would correctly match petitioner's payment of tax. Under the circumstances, and on the authority of , affd. per curiam , (C.A. 3, 1959), we hold that respondent has failed to establish by clear and convincing evidence that petitioner's return for 1946 was false and fraudulent with intent to evade taxes. In , we said (p. 863): The narrow question is whether respondent has carried his burden of proving that a fraudulent return was filed so as to avoid the statute of limitations under the circumstances of this case, including the fact that he is unable to show what return was filed in the first place. This is not a case where the contents of the return have been demonstrated by secondary evidence. The *89 only thing shown is the amount of tax due as entered on the collector's assessment list. If this indicated, even by inference, the gross income and deductions entered upon the return, there might be some validity to respondent's argument that the burden should shift to petitioner. But the complications of setting out deductible items, subtracting them from gross income, giving effect to available credits, and then computing and entering the net tax due are too well known to permit a valid inference that the tax shown by the return is of itself sufficient measure either of gross income actually reported or of deductions properly taken. Here we regard the failure to produce adequate evidence of the contents of the returns, upon whose falsity respondent relies, as fatal. * * * We accordingly hold that the year 1946 is barred by limitations. 1947-1953 Petitioner has furnished no leads or suggestions as to any possible nontaxable sources of income other than his wife's $5,000 inheritance in the 1930's and the suggestion to an agent of respondent that he had made bank account withdrawals in the depression. Our discussion of the cash on hand item, supra, has allowed petitioner *90 certain cash on hand for the beginning of the taxable years in question which far exceeds his bank withdrawals. The deficiencies in net income proved by respondent must have come from taxable sources for each of the years involved, namely petitioner's dental practice and mortgage interest. Respondent has affirmatively proved a consistent pattern of large understatements of net income for the years 1947 to 1953, inclusive. The consistency, and size of the understatements when compared with reported net income, may alone indicate fraud and not mere unintentional omissions. (C.A. 8, 1959) [Appeal dismissed nolle pros.]. See also , rehearing denied . However, consistently large understatements are not the only evidence of fraud present. Petitioner held almost 90 mortgages at five and six per cent. The following amounts of interest income were declared by petitioner in his returns for the years 1947 to 1953, inclusive, as compared to the total mortgage balances outstanding: Interest
Income
Mortgage
Year
Declared
Balance
1947
$1,794.72
$125,800.00
1948
1,705.25
137,650.61
1949
1,561.01
146,828.14
1950
2,860.50
163,293.09
1951
3,952.64
177,935.88
1952
4,596.60
154,021.85
1953
4,980.84
156,732.77
*91 In each of the years involved the understatement of interest income is obvious and is far too great to indicate a mere act of inadvertence. Upon careful consideration of the entire record, we think it inescapable that each of the returns for the years 1947 to 1950, inclusive, were false or fraudulent, filed with intent to evade tax and that none of these years are barred by limitations. (Since we have found that a false or fraudulent return was filed for 1950, we need not pass upon the 275(c) issue for that year.) Upon the same basis, we conclude that a part of each of the deficiencies for the years 1947 to 1953, inclusive, was due to fraud with intent to evade tax. Deficiency Issues Deficiencies for the year 1946 are barred by limitations. Subject to the modifications set forth infra, petitioners have not proved error in the deficiencies determined by respondent for the years 1947 to 1953, inclusive. Since the burden of proving these determinations erroneous lies with petitioners, they must stand. The modifications referred to arise (a) from Schedule S (mortgage schedule) which respondent had adopted, and which we have found to be correct and (b) cash on hand. As to cash *92 on hand, for the purpose of deficiencies, we accept respondent's recommendation, so far as here material, allowing cash on hand in the following amounts as of the following dates: 12/31/46 - $2,000; 12/31/47 - $1,500; 12/31/48 - $1,000; 12/31/49 - $500; 12/31/50 - $300; 12/31/51 - $300; 12/31/52 - $300; 12/31/53 - $300. These amounts are less than those which we took into account in determining the fraud issue, where, since the burden was on respondent, we gave petitioner the benefit of any possible doubt. On the issue of deficiencies, however, the burden of proof of error is upon petitioner. On the basis of the meager testimony offered by petitioner, we might well be justified in holding that he has proved no more than an approximate $300 in cash in any of the years involved, but since respondent, wisely, we think, has recommended amounts larger than $300 for several of the years involved (set forth supra), we accept and apply his recommendation. Additions to Tax All additions to tax allowed are subject to recomputation under Rule 50 in the light of adjustments required in this Opinion of respondent's original determination of deficiencies. Additions for 1946 are barred by *93 limitations. 294(d)(1)(A) Respondent's determination of additions for failure to file declarations of estimated tax for the years 1947 to 1952, inclusive, under section 294(d)(1)(A) of the 1939 Code, must stand since we have found that no declarations were filed for these years and petitioners have not shown that such failure to file was due to reasonable cause. 294(d)(2) Respondent concedes that additions to tax for substantial underestimation of estimated tax for the years 1947 to 1952, inclusive, are not proper where declarations of estimated tax were not filed and additions under section 294(d)(1)(A) were imposed. . Petitioners filed a declaration of estimated tax for 1953 declaring $600 in estimated tax. Their 1953 tax paid was $1,147.30. Petitioners' 1952 tax paid was $1,181.62. Petitioners have not shown that the provisions of section 294(d)(2) of the 1939 Code are inapplicable, and respondent's determination is approved. 293(b) The additions to tax for fraud with intent to evade tax under section 293(b) [6] of the 1939 Code for the years 1947 to 1953, inclusive, are proper for reasons set forth in our discussion *94 of the fraud issue, supra. Decisions will be entered under Rule 50. Footnotes
1. The following proceeding is consolidated herewith: William S. Baglivo and Isabella Baglivo, Docket No. 62458.↩
2. Docket No. 62457 covers the individual return of William S. Baglivo for 1946 and 1947. Docket No. 62458 covers the joint return of William S. Baglivo and Isabella Baglivo for the years 1948 through 1953, inclusive.↩
*. Respondent's statutory notice of deficiency did not allocate the total section 294(d) additions determined as between section 294(d)(1)(A) and 294(d)(2).↩
4. The following explanatory symbols are used: (a) requiring adjustment discussed in Opinion; (s) admitted in pleadings; (u) unsupported by affirmative evidence.↩
5. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. * * *↩
6. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deflciency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩